## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTONIO AMORMINO,

       Plaintiff,

v.

LNW GAMING, INC., d/b/a
Light & Wonder, *et al.*,

       Defendants.

_____/

Case No. 24-13009
Hon. Jonathan J.C. Grey

## OPINION AND ORDER GRANTING DEFENDANT LNW'S MOTION TO DISMISS (ECF No. 2), GRANTING THE LIGHT & WONDER DEFENDANTS' MOTION TO DISMISS (ECF No. 3), AND DENYING MOTION TO STRIKE AS MOOT (ECF No. 4)

This matter is before the Court on two motions to dismiss, one filed by Defendant LNW Gaming, Inc. ("LNW") and another by Defendants Light and Wonder International, Inc. and Light & Wonder, Inc. (the "Light & Wonder Defendants"). (ECF Nos. 2-3.) The motions are fully briefed.[1] (ECF Nos. 8-9, 11, 12-13, 15.) For the following reasons, both motions (ECF Nos. 2-3) are **GRANTED** and the motion to strike jury demand (ECF No. 4) is consequently **DENIED AS MOOT**.

_____

[1] The Court finds that oral argument will not aid in its disposition of the motions; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

# I.   BACKGROUND

Amormino has brought this lawsuit against LNW and the Light &
Wonder Defendants alleging two Counts: (1) Wrongful Termination in
Violation of the Michigan Whistleblowers' Protection Act ("WPA"),
M.C.L. § 15.361 *et seq*.; and (2) Wrongful Discharge in Violation of Public
Policy.  (ECF No. 1-1, PageID.18-19.)

The facts set forth in Amormino's complaint are as follows.[2]
Beginning in May of 2022, Amormino was employed by LNW as the Head
of Casino Studio for North America.  (ECF No. 1-1, PageID.15.)  On July
9, 2024, and July 31, 2024, Vice President of Operations Dror
Damchinsky requested that Plaintiff alter certain financial documents.
(*Id.*) Amormino refused these requests as he believed they were illegal
and reported them to Vickie Huber, Head of Accounting, and Melissa Sly,
Office Manager. (*Id.* at PageID.16.) Specifically, Amormino believed the
request violated the Sarbanes-Oxley Act ("SOX") as a request to falsify or
manipulate capital asset reports. (*Id.* at PageID.19.)

---

[2] In his complaint, Amormino appears to primarily refer to LNW by its d/b/a name,
"Light & Wonder." (*See e.g.*, ECF No. 1-1, PageID.14 ¶8.) The only information
provided as to the Light & Wonder Defendants is their corporate form and the fact
that they conduct business in Oakland County, Michigan. (*Id.* at ¶2-5.)

After making this report and speaking with LNW's corporate investigators, Amormino's mid-year review was cancelled on August 7, 2024. (*Id.* at PageID.17.) On August 12, 2024, Amormino filed a complaint with the federal Occupational Safety and Health Administration ("OSHA") and that same day he was placed on administrative leave. (*Id.*) LNW terminated his employment shortly thereafter, which he characterizes as wrongful termination. (*Id.*)

## II.    LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

3

the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–679 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

Courts usually consider only the allegations in the complaint. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citations omitted). However, courts may also rely on "exhibits attached to the complaint, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss"—but only if the complaint relies on them—without having to convert the motion to dismiss to a motion for summary judgment. *Id.* at 680–681 (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

## III.   Applicable Law

The parties both cite cases from a wide range of jurisdictions in support of their arguments. This matter is before the Court based on

diversity jurisdiction under 28 U.S.C. § 1332(a), and Amormino has brought two claims, both of which are grounded in state law. (ECF No. 1-1, PageID.18-19.) In such a case, federal courts apply the law of the state in which they sit, including that state's choice of law rules. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021). Here, Michigan law applies to both Amormino claims as no other state has an interest in having its law applied. *See Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017); *Mull-It-Over Prods., LLC v. Titus Constr. Grp. Inc.*, No. 18-CV-414, 2018 WL 11377214 at *2 (W.D. Mich. Aug. 23, 2018).

## IV.   LNW's Motion to Dismiss

### A.   WPA Claim

Under the WPA, "protected activity" consists of: (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation. *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 213 (Mich. 1998).

#### 1.   Causation

LNW argues that Amormino has failed to plead causation as he has not alleged that anyone at LNW had knowledge of the OSHA complaint

5

prior to his termination. (ECF No. 2, PageID.57.) In response, Amormino argues that his pleading is sufficient to overcome a motion to dismiss because he stated he was placed on administrative leave on the same day he made his OSHA complaint, and he was terminated only four days later.[3] (ECF No. 8, PageID.304.)

To establish causation for the purposes of the WPA, the employer must receive "objective notice of a report or a threat to report" for the causation element to be satisfied. *Kaufman & Payton, P.C. v. Nikkila*, 503 N.W.2d 728, 732 (Mich. Ct. App. 1993); *Sanker v. Ken Garff Auto., LLC*, No. 361295, 2023 WL 5494392, at *10 (Mich. Ct. App. Aug. 24, 2023). "When there is no evidence that the employer knew about protected activity at the time of the plaintiff's discharge, the requisite causal connection cannot be established." *McBrayer v. Detroit Med. Ctr.*, No. 294268, 2010 WL 5175458 at *4 (Mich. Ct. App. Dec. 21, 2010).

The cases Amormino cites merely establish that when there are facts that suggest an employer had notice of a protected activity, a temporal connection between that notice and an adverse employment

---

[3] The Court notes that LNW provided copies of Amormino's 2023 W2 and a service letter from the United States Department of Labor in support of their motion. (ECF No. 2-1, 2-2.) The Court does not rely on either document for the purposes of the instant motion.

action can satisfy the prima facie burden on the causation element. For example, in *Grimsley v. American Showa, Inc.*, the adverse employment action occurred a week after the employer received a complaint about the employee's conduct which constituted the protected activity. No. 17-CV-24, 2017 WL 3605440, at *6 (S.D. Ohio Aug. 21, 2017). Likewise, in *Parker v. Greenup County Board of Education*, it was uncontested that the employer had notice of the plaintiff's EEOC complaint. No. CIV.A. 13-48-HRW, 2014 WL 2992214, at *9 (E.D. Ky. July 2, 2014). Finally, in *Goller v. Ohio Department of Rehabilitation & Correction*, the record contained evidence showing that the defendant knew that the plaintiff had engaged in a protected activity. 285 F. App'x 250, 256 (6th Cir. 2008). Given that evidence, temporal proximity was a relevant factor in evaluating causation. *Id.* at 257.

Here, Amormino has pleaded no facts from which the Court could infer that LNW had notice of his report to OSHA or that Amormino intended to make such a report. Absent any fact from which the Court could make such an inference, the temporal proximity is alone insufficient to establish causation. For that reason, LNW's motion to dismiss is **GRANTED WITHOUT PREJUDICE** as to Count I because

it is plausible that Amormino could amend his complaint to sufficiently establish causation.

### 2. Public Body

As it is possible Amormino could amend his complaint to sufficiently plead causation, the Court also addresses LNW's argument that OSHA does not qualify as a "public body" for the purposes of the WPA. Although not entirely clear, it appears that Amormino argues that OSHA qualifies as a public body under M.C.L. § 15.361(d)(v) which includes in the definition of a public body "[a] law enforcement agency or any member or employee of a law enforcement agency." Courts have established that "law enforcement agency" for the purposes of the WPA may include certain federal agencies. *Lewandowski v. Nuclear Mgt.*, 724 N.W.2d 718, 722 (Mich. Ct. App. 2006); *Ernsting v. Ave Maria Coll.*, 736 N.W.2d 574, 583 (Mich. Ct. App. 2007). However, it is less clear which federal agencies qualify as a "law enforcement agency" for the purposes of the WPA.[4] To answer this question, the Court turns to a survey of case law and general principles of statutory interpretation.

---

[4] As this Court is sitting in diversity, absent a clear pronouncement from Michigan Supreme Court on a given question, the Court "must predict how the court would rule by looking to all the available data." *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 361 (6th Cir. 2012) (quoting *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d

In *Lewandowski*, the Michigan Court of Appeals held that a federal independent regulatory agency, specifically the Nuclear Regulatory Commission ("NRC"), did not qualify as a law enforcement agency, and thus a public body, for the purposes of the WPA. 724 N.W.2d at 722. In making this finding, the court reviewed Michigan cases containing the term "law enforcement agency" and it found that none referred to the term to define a "civil regulatory agency." *Id.* at 722. The court further clarified that as the term is commonly understood, law enforcement refers to "the prevention of criminal activities rather than the regulation of industries." *Id.*

In contrast, in *Ernsting,* the Michigan Court of Appeals found that the federal Department of Education ("DOE") qualified as a "law enforcement agency" and distinguished *Lewandowski* on the basis that the NRC is an independent regulatory agency, while the DOE is an

---

450, 454 (6th Cir. 2001)). The data courts may consider includes the decisional law of the Michigan Supreme Court in analogous cases and relevant dicta in related cases. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). "Published, on-point decisions issued by the Michigan Court of Appeals are especially important 'data' that this Court must consider in ascertaining how the Michigan Supreme Court would rule. But they are not conclusive on questions of Michigan law." *Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (internal citation omitted).

executive department. 736 N.W.2d at 583.[5] The *Ernsting* court instructed

that it is error to rely solely on an agency's "arrest power" and courts

must evaluate an agency's ability "to detect and punish violations of the

law" in determining if it qualified as a law enforcement agency for the

purposes of the WPA. *Id.* at 515.

Courts have applied the reasoning in *Ernsting* to a variety of federal

agencies. *See e.g.*, *Robinson v. Radian, Inc.*, 624 F. Supp. 2d 617, 629

(E.D. Mich. 2008) (holding the federal Office of Federal Contracts

Compliance Programs is a public body); *Henry v. Laborers Loc. 1191*, No.

302373, 2012 WL 2579683, at *1 n.1 (Mich. Ct. App. July 3, 2012)

(suggesting the United States Department of Labor may qualify as a

public body); *Whitaker v. U.S. Sec. Assocs., Inc.*, 774 F. Supp. 2d 860, 868

n.14 (E.D. Mich. 2011) (suggesting the federal Transportation Security

Administration may qualify as a public body); *Lemanski v. Rev Grp., Inc.*,

No. 19-11253, 2019 WL 5455416 at *7 (E.D. Mich. Oct. 24, 2019) (holding

the FTC is not a law enforcement agency under the WPA).

---

[5] However, *Ernsting* strongly relied on the powers of the Inspector General within the DOE, as established by the Inspector General Act of 1978, 5 U.S.C. App. 3, §1 *et seq.* (repealed 2022). The Inspector General Act of 1978 established an Inspector General within both the NRC and DOE with comparable powers. 5 U.S.C. App. 3, §§ 2, 11(2) (repealed 2022); 5 U.S.C. § 402(a)(1).

Most recently, the *Lemanski* court found that the Federal Trade Commission ("FTC") does not qualify as a law enforcement agency under the WPA because it "does not have the authority to initiate or prosecute criminal cases and must refer all criminal matters uncovered in the course of its civil investigations to the Attorney General." *Lemanski*, 2019 WL 5455416, at *7. Furthermore, the *Lemanski* court noted that the FTC cannot impose criminal sanctions. *Id.*

In a similar context, in *Redzinski v. Spectrum Health Hosps.*, No. 366932, 2025 WL 618310 (Mich. Ct. App. Feb. 25, 2025) (unpublished), the court found a private law enforcement agency did not constitute a "law enforcement agency" for the purposes of the WPA. That court looked to the Michigan Commission on Law Enforcement Standards Act ("MCOLES"), M.C.L. § 28.601 *et seq.*, which defines "law enforcement agency" as:

> an entity that is established and maintained in accordance with the laws of this state and is authorized by the laws of this state to appoint or employ law enforcement officers.

M.C.L. § 28.602(e). This approach mirrors that applied by the dissent in *Ernsting*. *See* 736 N.W.2d at 585 (Zahra, J., dissenting).

11

Finally, Amormino cites *Stegall v. Res. Tech. Corp.*, 22 N.W.3d 410 (Mich. 2024), in support of his argument. However, *Stegall* is inapplicable as it discussed the fact that OSHA and MiOSHA are similar in terms of their enacting statute and standards applied. *Id.* at 420. The fact that standards applied by OSHA and MiOSHA may be similar is irrelevant to the question of weather or not a federal agency qualifies as a public body for the purposes of the WPA, which begins with an evaluation of the text of the WPA and legislative intent. *Williamson v. AAA of Michigan*, 15 N.W.3d 546, 550 (Mich. 2024).

As the caselaw does not provide a clear answer in this case, the Court looks to general principles of statutory interpretation. "The cardinal rule of all statutory construction is to identify and give effect to the intent of the Legislature." *Shallal v. Cath. Soc. Servs. of Wayne Cnty.*, 566 N.W.2d 571, 611 (Mich. 1997). The first step is to look to the language of the statute and read that language according to its ordinary and generally accepted meaning. *Id.* As a remedial statute, the WPA must be liberally construed to favor the persons that the Legislature intended to benefit. *Chandler*, 572 N.W.2d at 212. As defined in Black's Law Dictionary, "law enforcement" is the "detection and punishment of

12

violations of the law" and is "not limited to the enforcement of criminal laws." *Law Enforcement*, *Black's Law Dictionary* (12th ed. 2024).

OSHA is a regulatory agency within the Department of Labor ("DOL") established by the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* (the "Act"). The purpose of the Act included "to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions[.]" 29 U.S.C. § 651. Under the Act, OSHA inspectors can conduct inspections and seek injunctive relief other civil penalties. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 9 (1980). Furthermore, it can recommend that the Department of Justice pursue criminal charges for certain violations of the Act. 29 U.S.C. § 666.

Given the fact courts are to interpret remedial statutes broadly, and the term "law enforcement" can refer to both civil and criminal enforcement, the Court finds that OSHA qualifies as a law enforcement agency under the WPA. This finding is bolstered by the fact that, like the DOE, OSHA has broad authority to enforce the laws within its purview. Given its powers of investigation, it is more in line with the DOE than

the NRC or FTC. Consequently, it qualifies as a law enforcement agency for the purposes of the WPA.

### B.     Public Policy

#### 1.     Sarbanes-Oxley Act Pre-emption

Under Michigan law, generally "a public-policy claim may only be sustained if there is no applicable statute prohibiting retaliatory discharge for the conduct at issue." *Lewandowski*, 724 N.W.2d at 723 (citing *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 650 (Mich. 1993)); *see also Kimmelman v. Heather Downs Mgmt. Ltd.*, 753 N.W.2d 265, 268 (Mich. Ct. App. 2008); *Nezwisky v. BorgWarner, Inc.*, No. 346346, 2020 WL 1896763 at *2 (Mich. Ct. App. Apr. 16, 2020). As recently summarized by the Michigan Supreme Court,

> [T]he threshold inquiry is whether the public-policy claim is based on a statute that has an antiretaliation provision. If so, the court must then ask whether the remedies of the underlying statute are exclusive. If deemed exclusive, the public-policy claim is preempted. But if the remedies are cumulative, the public-policy claim may proceed.

*Stegall*, 22 N.W.3d at 417-418.[6]

---

[6] *Silberstein v. Pro-Golf of Am., Inc.*, 750 N.W.2d 615 (Mich. Ct. App. 2008), is inapplicable to the question of pre-emption as the issue was not raised in that case. Instead, *Silberstein* merely involved a determination that there was sufficient evidence to support a finding that one of the reasons for plaintiff's termination was a refusal to violate the law. *Id.* at 457.

The answer to the first question is yes, the SOX has an antiretaliation provision. It reads as follows:

(1) In general.--A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by--

(A) filing a complaint with the Secretary of Labor; or

(B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

(2) Procedure.--

(A) In general.--An action under paragraph (1)(A) shall be governed under the rules and procedures set forth in section 42121(b) of title 49, United States Code.

(B) Exception.--Notification made under section 42121(b)(1) of title 49, United States Code, shall be made to the person named in the complaint and to the employer.

(C) Burdens of proof.--An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code.

(D) Statute of limitations.--An action under paragraph (1) shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation.

(E) Jury trial.--A party to an action brought under paragraph (1)(B) shall be entitled to trial by jury.

18 U.S.C. §1514A(b).

15

The next step is to determine whether this remedy is exclusive or cumulative, which must include "an inquiry into the adequacy of the remedy[.]" *Stegall*, 22 N.W.3d at 420. In *Stegall*, the court found the remedies granted by OSHA and MiOSHA inadequate because of the "30-day limitation, the unfettered discretion granted to the department, and the employee's lack of control over what occurs after a complaint has been filed[.]" *Id.* at 422. However, *Stegall* did not disturb the threshold analysis in *Dudewicz* which found that the remedies under the WPA are exclusive. *Id.*

Unlike the remedy afforded under OSHA, the SOX antiretaliation provision requires the "enforcing body . . . to either take action or put the ball back in the employee's hands to pursue their own remedy." *Stegall*, 22 N.W.3d at 421. Specifically, under the SOX, if a final decision is not issued within 180 days of the filing of the complaint with the Secretary of Labor, the plaintiff can file suit in the appropriate court. 18 U.S.C. §1514A(b)(1)(B). Furthermore, there is a longer period in which to file a claim in the first instance, 180 days as opposed to 30. 18 U.S.C. §1514A(b)(2)(D).

16

Given the fact that plaintiffs have relatively easy access to a remedy under the SOX, as compared to OSHA, it provides an adequate remedy for retaliation. As a result, because the SOX provides adequate relief to Amormino, his public policy claim is not sustainable. For the foregoing reasons, the Court finds that Amormino's public policy discharge claim under Michigan law is pre-empted by the SOX. For that reason, the public policy claim is **DISMISSED WITH PREJUDICE**.

## IV.     Non-Employer Defendants' Motion to Dismiss

In his response to the Light & Wonder Defendants' motion to dismiss, Amormino raises the following facts for the first time: (1) defendants have the same registered office mailing address; (2) that address is the listed for the officers and directors of each defendant; (3) there are common directors and board members between the defendants; and (4) there is centralized control of personnel among the defendants. (ECF No. 11, PageID.362.) However, none of these facts were pleaded in Amormino's complaint. Amormino argues that there is sufficient evidence to find that the Light & Wonder Defendants constituted his joint employers. (ECF No. 11, PageID.360.) However, at this stage, the Court must determine if it can even consider the new facts raised by Amormino.

17

As the basis for these facts, Amormino attaches Department of Licensing and Regulatory Affairs ("LARA") records for each of the defendants. (ECF No. 11-2.)

Courts may generally only consider information contained in the complaint when evaluating a motion to dismiss, the court may also consider public records if they are "referred to in the complaint and are central to the claims contained therein," without converting the motion into one for summary judgment. *Rondigo*, 641 F.3d at 681. Because Amormino does not reference these facts or documents in his complaint, and does not even plead the theory of liability they are intended to support, the Court declines to consider them when ruling on the motion to dismiss.

## A. Definition of "Employer"

For purposes of the WPA, an "employee" is "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied," including "a person employed by the state or a political subdivision of the state except state classified civil service." M.C.L. § 15.361(a). An "employer" in turn is "a person who has

1 or more employees," including "an agent of an employer and the state or a political subdivision of the state." M.C.L. § 15.361(b).

Amormino cites cases from the federal anti-discrimination context, which have held that an entity that does not directly employ a plaintiff may still be considered an employer under either a single employer or joint employer theory. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). The joint-employer and single-employer doctrines are "analytically distinct." *Id.* at 993 n.4. Although little case law exists on whether either doctrine can be applied in the WPA context, the parties appear to agree that the doctrines apply in this case as generally outlined in federal anti-discrimination law. (ECF No. 15, PageID.510-512; ECF No. 11, PageID.361); *see also Beaver v. Macomb Cnty.*, No. 21-CV-10750-TGB-EAS, 2022 WL 839943 at *11 (E.D. Mich. Mar. 21, 2022).

### 1.   Single Employer / Integrated Enterprise

In analyzing single employer status, courts examine the following four factors: (1) interrelation of operations; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control.

19

*Swallows*, 128 F.3d at 993. None of the factors by themselves is dispositive, and it is not necessary that all four be satisfied. *Swallows*, 128 F.3d at 993. However, control over labor relations is a "central concern." *E.E.O.C. v. Falls Village Retirement Community, Ltd.*, No. 05–1973, 2007 WL 756803, *7 (N.D. Ohio 2007).

As Amormino's complaint currently stands, he has pleaded no facts from which the Court could find in his favor on any of these elements. Even if the Court were to consider the evidence provided by Amormino, he has still provided no facts suggesting a centralized control of labor relations and personnel. Furthermore, the mere fact that LNW may be a subsidiary of Light & Wonder, a fact which was not pleaded in the complaint, does not establish centralized control of labor relations personnel. *See Schumacher v. J.P. Morgan & Co. Inc.*, No. 98 C 108, 1999 WL 58554 at * 2 (N.D. Ill. Feb. 3, 1999) (finding a parent-subsidiary relationship insufficient to overcome a motion to dismiss based on a single employer theory.) For these reasons, the Court finds that Amormino has failed to state a claim against the Light & Wonder Defendants based on a single employer theory.

### 2. Joint Employer

The primary factors in determining if an entity qualifies as a plaintiff's joint employer include the "entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (citing *Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985)).  These factors largely overlap with the economic reality test that some courts have applied in the Elliott-Larsen Civil Rights Act ("ELCRA") context, which considers: "(1) control; (2) payment of wages; (3) hiring and firing; (4) responsibility for the maintenance of discipline." *Bolin v. Gen. Motors, LLC*, No. 16-CV-13686, 2017 WL 3675611, at *12 (E.D. Mich. Aug. 25, 2017). As with ELCRA claims, Michigan courts generally apply the economic reality test to determine if an entity qualifies as an employer for the purposes of claims under the WPA. *Janetsky v. Cnty. of Saginaw*, No. 346542, 2023 WL 6322639, at *6 (Mich. Ct. App. Sept. 28, 2023); *Kardasz v. Spranger*, No. 17-CV-10937, 2019 WL 1989021, at *9 (E.D. Mich. May 6, 2019) (applying Michigan law); *Steiger v. Presque Isle Cnty.*, No. 15-CV-14142, 2016 WL 6600027, at *5 (E.D. Mich. Nov.

8, 2016) (same); *Chilingirian v. City of Fraser*, 486 N.W.2d 347, 349 (Mich. Ct. App. 1992).

Unlike in the cases he cites, Amormino has not raised either a single or joint employer claim, or even allegations from which such a theory could be inferred, in his complaint. For example, in *E.E.O.C. v. Jeff Wyler Eastgate, Inc.*, No. 03CV662, 2006 WL 2785774, at *3 (S.D. Ohio Jan. 9, 2006), the court took judicial notice of public documents when the complaint put the new defendants on notice of an integrated enterprise theory of party inclusion. That is not the case here, as Amormino raised both the single and joint employer claims for the first time in his response brief. Amormino has pleaded no facts in his complaint on which the Court could find he plausibly stated a joint employer claim.

Furthermore, even if the Court were to consider the evidence presented by Amormino, he has still not provided facts suggesting that the Light & Wonder Defendants had any control over any of the relevant components of the employees of LNW. As with the single employer theory, a parent-subsidiary relationship is not enough to establish joint

employer status. As articulately described in the Fair Labor Standards

Act ("FLSA") context:

> Certainly, a parent-subsidiary relationship can potentially entail a relationship that lends itself to kinds of mutual entanglements that indicate the type of joint-employer scenario Plaintiff asserts here. But not necessarily. To the contrary, a parent is of course legally separate from the subsidiary, and in a given case a parent might also be in fact separate from its subsidiary in ways that indicate affirmatively that it is not a joint employer under the applicable test. After all, a parent is allowed to form a subsidiary at least in part in order to avoid responsibility for the subsidiary's debts. A parent can then accomplish this objective of avoiding its subsidiary's debts by, among other things, keeping itself separate from the subsidiary. So, as the Court is confident counsel understand, it is hardly automatic that a parent will necessarily be liable for its subsidiary's debts (even those stemming for violations of the FLSA). In short, to establish that a company is a joint employer, it is nowhere near sufficient simply to point to the company's close legal relationship (such as parent-subsidiary) with the primary employer.

*Hanna v. Marriott Hotel Servs.*, No. 3:18-cv-00325, 2020 U.S. Dist. LEXIS

263014, at *17 (M.D. Tenn. May 7, 2020).

For the foregoing reasons, Amormino has failed to state a claim for

which relief can be granted as to the Light & Wonder Defendants.

Consequently, the Court **GRANTS** the Light & Wonder Defendants'

motion to dismiss **WITHOUT PREJUDICE**.

## V.      Motion for Leave to Amend

To the extent that Amormino's response contains a motion for leave to amend his complaint, such a request cannot be contained in a response brief. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young*, LLP, 622 F.3d 471, 486 (6th Cir. 2010) ("A request for leave to amend almost as an aside . . . in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.") (citations and quotations omitted); *see also Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017). *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (unpublished), cited by Amormino, is not applicable in this case as it involved the leniency granted to pro se parties. Consequently, to the extent Amormino's response contains a motion for leave to amend, it is **DENIED**.

However, dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). Here, it is possible that amendment could save Amormino's WPA claim. Consequently, should Amormino wish to seek leave to amend the Complaint, he must file a motion for leave to amend

within **twenty-one (21)** days of the date of this Order, or the case will be dismissed with prejudice as to the Light & Wonder Defendants.

## VI.     CONCLUSION

For the foregoing reasons, LNW's motion to dismiss (ECF No. 2) and the Light & Wonder Defendants' motion to dismiss (ECF No. 3) are **GRANTED**.

**IT IS FURTHER ORDERED** that **COUNT I IS DISMISSED WITHOUT PREJUDICE**. Should Amormino wish to seek leave to amend the Complaint, he must file a motion for leave to amend within **twenty-one (21)** days of the date of this Order, or the case will be dismissed with prejudice in its entirety.

**IT IS FURTHER ORDERED** that Count II is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion to strike plaintiff's jury demand (ECF No. 4) is **DENIED WITHOUT PREJUDICE AS MOOT**.

**SO ORDERED.**

**s/Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

Date:  August 25, 2025

25

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2025.

s/ **S. Osorio**
Sandra Osorio
Case Manager
