**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTONIO AMORMINO,

Plaintiff,

Case No. 24-13009
Hon. Jonathan J.C. Grey

v.

LNW GAMING, INC.,
DBA LIGHT & WONDER,
LIGHT AND WONDER
INTERNATIONAL, INC.,
LIGHT & WONDER, INC.

Defendants.
__________________________________/

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT (ECF No. 17)**

In this whistleblower case, Plaintiff Antonio Amormino's filed a motion for leave to file a first amended complaint. (ECF No. 17.) The motion is fully briefed. (ECF Nos. 17 and 18.)[1] For the reasons that follow, Amormino's motion for leave to file an amended complaint is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 17.)

[1] The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I. BACKGROUND

Amormino's original complaint alleged that he was an employee of Defendant LNW Gaming, Inc. d/b/a Light & Wonder, a company that provides gambling products and services. (ECF No. 1-1, PageID.14–15.) That complaint contained two counts—wrongful termination in violation of the Michigan's Whistleblower's Protection Act ("WPA") and wrongful discharge in violation public policy. (*Id.*, PageID.18–19.) Specifically, Amormino alleged his termination was unlawful because his employers fired him in retaliation for his report of illegal activity to the Occupational Safety and Health Administration ("OSHA"). (ECF No.1-1, PageID.16.) Amormino sued three defendants—LNW Gaming, Inc., d/b/a Light & Wonder ("LNW"), Light & Wonder, Inc., and Light and Wonder International, Inc. (*Id.*, at PageID.14.) LNW filed a motion to dismiss. (ECF No. 2.) Defendants Light & Wonder, Inc., and Light and Wonder International, Inc. (collectively, "the Light & Wonder Defendants") filed a separate motion to dismiss. (ECF No. 3). After considering the arguments in the parties' briefs, this Court dismissed both counts against LNW because Amormino failed to adequately plead causation for his WPA claim and the Sarbanes-Oxley Act preempted Amormino's

retaliation-based public policy claim. (*See* ECF No. 16, PageID.549–552, 552–558); *Amormino v. LNW Gaming, Inc.*, No. 24-13009, 2025 WL 2448479, at **2–3, **5–6 (E.D. Mich. Aug. 25, 2025). The Court also dismissed those claims against the Light & Wonder Defendants because Amormino failed to properly allege that the Light & Wonder Defendants were his joint employers. *Id.* at **7–8. Amormino then moved for leave to file a first amended complaint, which he claims addresses the deficiencies highlighted by this Court in its August 25, 2025, order. (ECF No. 17.) In addition to his efforts to cure those defects, Amormino seeks to add an "about to report" claim under the WPA to his original reporting claim under the WPA. (ECF No. 17-2, PageID.581.) LNW and the Light & Wonder Defendants oppose this motion. (ECF No. 18).

## II. LEGAL STANDARDS

### A. Rule 15(a)

Generally, parties who seek to amend their pleadings must do so within: 21 days after serving the complaint, 21 days of a responsive pleading, or 21 days after service of a motion, if a responsive pleading is required. Fed. R. Civ. P. 15(a)(A)–(B). Outside of that window, a party can amend its pleadings only with the opposing party's written consent

or the Court's leave. Fed. R. Civ. P. 15(a)(2). Courts should give leave to amend pleadings "when justice so requires." *Id.* The Court should deny leave only "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

In deciding whether leave to amend a pleading should be granted, courts consider the following six factors: (1) "[u]ndue delay in filing," (2) "lack of notice to the opposing party," (3) "bad faith by the moving party," (4) "repeated failure to cure deficiencies by previous amendments," (5) "undue prejudice to the opposing party," and (6) "futility of [the] amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458–459 (6th Cir. 2001). A proposed amendment is futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citing *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir. 1993)).

**B. Rule 12(b)(6)**

To survive a motion to dismiss, a pleading must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As such, the proposed

amended pleading "must allege facts, that if accepted as true, are sufficient to raise a right to relief above the speculative level, and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citation modified). The Court construes proposed amended complaints "in the light most favorable to the plaintiff," accepts all its well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

## III. ANALYSIS

Defendants urge the Court to deny leave to amend for three reasons: 1) undue delay, 2) prejudice, and 3) futility. The Court addresses each argument.[2]

[2] Of the six *Wade* factors, the defendants only provide arguments on three of them—undue delay, prejudice, and futility. *Wade*, 259 F.3d at 458–59. As such, the Court will not address the other three.

### A. Undue Delay and Prejudice

First, the Court considers whether the amendment was a result of undue delay or if amendment causes substantial prejudice to the defendants. Delay by itself is an insufficient basis to deny an amendment. *Wade*, 259 F.3d at 458 (citations omitted). Prejudice based on delay requires "[a]t least some significant showing of prejudice." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) (citation modified). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (citation modified).

While the defendants accurately describe the timeline of events, the Court concludes that the amendment was not a result of undue delay. Amormino timely filed his motion for leave to amend within 21 days pursuant to the Court's August 25, 2025, order. *See Amormino*, 2025 WL 2448479 at *9. Defendants correctly argue that Amormino could have taken an amendment as of right instead of opposing the Defendants' motion to dismiss. But defendants do not cite any authority showing that failing to amend as of right when a party could have is grounds for a finding of undue delay. Even if this were true, undue delay by itself is not

enough to deny an amendment. *Wade*, 259 F.3d at 458 (citations omitted). They also cite cases for the proposition that "[t]he proverbial clock begins to run on an undue delay inquiry when the plaintiff is aware of the basis of the claim." *Serrano v. Cintas Corp.*, No. 04-40132, 2010 WL 2232350 (E.D. Mich. June 2, 2010), *opinion amended and superseded*, 271 F.R.D. 479, 484 (E.D. Mich. 2010), *vacated and remanded*, 699 F.3d 884 (6th Cir. 2012) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)) (quotations omitted). But in those cases, discovery had already closed. *Serrano*, 271 F.R.D. at 481; *Duggins*, 195 F.3d at 834. Here, discovery has not yet begun. As such, the Court does not find that the proposed amendment was a result of undue delay.

As for prejudice, defendants argue that their clients will be prejudiced by an amended pleading because Amormino seeks to add a claim barred by the statute of limitations and the defendants have had to pay extensive attorney's fees to brief dispositive motions and to strike Amormino's jury demand. (ECF No. 18, PageID.615–616.) The defendants first argument relies on *Bishop v. Lucent* for the proposition that it is severely prejudicial to add new claims barred by the statute of limitations where the plaintiff had knowledge of the facts supporting that

claim at the time of the original filing. 520 F.3d 516, 520 (6th Cir. 2008). But *Bishop* involved a much different situation than here, and the court never used the term prejudicial. *See id.* (not using the term prejudice or analyzing the prejudice factor of Rule 15(c)). The *Bishop* court concluded that a complaint, whose allegations created a strong inference that its claims were time-barred, was properly dismissed and leave to amend should be denied because "[p]laintiffs . . . have *steadfastly refused* to identify when they acquired the requisite actual knowledge of defendants' violation" which prevented the court from determining whether those claims were time-barred. *Bishop*, 520 F.3d at 522 (emphasis added). Defendants' reliance on *Bishop* is misplaced, as this case is different.

Unlike the plaintiff in *Bishop*, Amormino timely filed his original reporting claim under the WPA, as the defendants acknowledge. (*See* ECF No. 18, PageID.608.) Amormino also has not "steadfastly refused to identify" when he provided notice of his report to LNW because his proposed amended complaint—which is his first—asserts that he gave notice to corporate investigators in a meeting when he advised them that

he intended to make a report. *Bishop*, 520 F.3d at 522; (ECF No. 17-2, PageID.580–581.).

As to defendants' argument concerning the extensive attorney's fees, courts generally have only found prejudice where the litigation has advanced well beyond the pleading stage. *Compare Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020) (finding substantial prejudice where amendment was sought after discovery and dispositive motions deadlines passed) *with Martin v. Trott L., P.C.*, 198 F. Supp. 3d 794, 816 (E.D. Mich. 2016) (finding no prejudice where "[d]iscovery has not even begun"). This case is still in its infancy as it has yet to reach discovery. As such, the Court concludes that defendants would not suffer substantial prejudice if the Court were to allow an amendment.

## B. Futility

### *1. Causation*

This Court previously dismissed Amormino's original complaint in part because he did not plead any facts "from which the Court could infer that LNW had notice of his report to OSHA or that Amormino intended to make such a report." *Amormino*, 2025 WL 2448479 at *3. Amormino's

amended complaint cures this deficiency. The proposed amended complaint now alleges that: (1) Amormino informed two company investigators that he intended to report Mr. Damchinsky's illegal requests to a governmental agency, (2) one of the corporate investigators reported this information to other executives and/or Human Resources, and (3) defendant's decisionmakers became aware of Amormino's report and/or intent to report to OSHA and fired him as a result. (ECF No. 17-2, PageID.580–581.) This allegation cures the causation issue because the complaint now has a factual basis that supports causation. It is now clear who Amormino provided notice to (Mr. Maxwell), what the notice was (a statement that he intended to report Mr. Damchinsky's conduct to OSHA, a governmental agency), when this notice was given (during the August 6, 2024, meeting), where (at work), and how the notice was given to corporate insiders (Maxwell communicated it). (ECF No. 17-2, PageID.580–581.) Amormino's WPA claim is now plausible because an employer must receive "objective notice of a report or a threat to report" to satisfy causation. *Kaufman & Payton, P.C. v. Nikkila*, 503 N.W.2d 728, 732 (Mich. Ct. App. 1993). The new allegations plausibly allege just that.

Defendants argue that these amendments are not enough because "Plaintiff pleads only that upon information and belief, before Plaintiff's termination, decisionmakers . . . became aware of Plaintiff's report and/or intent to report to OSHA." (ECF No. 18, PageID.613 (citing ECF 17-2, PageID.581, ¶33).) Allegations of "information and belief" can survive a motion to dismiss if they "set forth a factual basis for such belief." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021). Amormino's proposed amended complaint does this. It contends that Mr. Maxwell is both a corporate investigator and a Vice President and that Maxwell conveyed information about the potential report to OSHA "by virtue of his role as a corporate investigator and Vice President." (ECF No. 17-2, PageID.581.) Moreover, the proposed amended complaint avers that "Mr. Maxwell informed other executives and/Human Resources personnel including but not limited to, Daniel O'Donoghue" and that it was Daniel O'Donoghue who placed Amormino on administrative leave. (*Id.*) So, contrary to defendants' assertion, Amormino now properly provides enough factual basis for this Court to plausibly find that his employer fired him in retaliation for his report or because he was "about to report" to a public body.

### *2. New "About to Report" Claim*

Next, defendants allege that Amormino's proposed amended complaint brings a new "about to report" claim. The WPA allows for reporting claims and "about to report" claims. *See* M.C.L. § 15.362. Amormino's prior complaint attempted to lay out a reporting claim based on defendants firing him in retaliation for making a complaint to OSHA. (ECF No. 1-1, PageID.17.) His proposed amended complaint alleges that the defendants fired him after Amormino told one of the corporate investigators that he was "about to report" the alleged illegal activity to OSHA, in addition to his original reporting claim. (ECF No. 17-2, PageID.580–581.) The difference matters because Michigan law imposes a "clear and convincing evidence" standard for "about to report" claims but not for reporting claims. *See* M.C.L. § 15.363(4).

Defendants argue that the proposed amended complaint in its current form fails to meet this clear and convincing evidence standard. The Court disagrees. While it is true that the WPA provides less protection "[t]he further an employee is from actually reporting," at this stage, Amormino need only plausibly plead that he was about to make a report at this stage. *Campbell v. G4S Secure Sols. (USA) Inc.*, 645 F.

App'x 506, 509 (6th Cir. 2016) (citing *Shallal v. Catholic Soc. Servs. of Wayne Cty.*, 566 N.W.2d 571, 576 (1997)); *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 215–16 (1998) (affirming the dismissal of a WPA claim "because he could not show facts from which to conclude that he . . . reported a violation of a law, regulation, or rule, or that he attempted to report.").

Amormino's proposed amended complaint contends that: (1) he "informed Mr. Maxwell and Mr. Moon that he intended to report Mr. Damchinsky's illegal requests to a governmental agency," (2) Maxwell "conveyed this information to other decisionmakers within the company," (3) he "filed a complaint with OSHA," and (4) he was "wrongfully terminated and retaliated against for threatening to make a complaint and/or making a complaint[.]" (ECF No. 17-2, PageID.580–581.) Ultimately, discovery may reveal that Amormino cannot meet the clear and convincing evidence standard, but for Rule 12(b)(6) purposes, Amormino's "about to report" WPA claim is adequate. *See Chandler*, 572 N.W.2d at 215–16.

Defendants argue that this is insufficient for a few reasons. First, they argue that the proposed allegations contradict his intake statement

to OSHA, which they attach as an exhibit. (ECF No. 18, PageID.598.) Defendants claim that the statement contradicts the proposed amended complaint because it does not include allegations that he threatened to report the alleged illegal conduct to OSHA. (*Id.*) Defendants rely on *White v. Baptist Mem'l Health Care Corp.* for the proposition that a plaintiff cannot defeat a dispositive motion by contradicting a previous sworn statement. (*Id.*, PageID.611 (citing *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012).) But Defendants read too far into it.

The Sixth Circuit found that the district court correctly disregarded the plaintiff's assertion, which came from a post-deposition declaration, because her new assertion was "flatly" contradicted by her earlier sworn deposition testimony and the plaintiff never explained the inconsistency. *White*, 699 F.3d at 877. No such direct contradiction exists here. While Amormino's statement does not mention that he was "about to report" a violation, this is at best an omission rather than a direct contradiction because his statement never says he did not report or was not going to report such a violation. (*See* ECF No. 18-1, PageID.620.) The relevance of this contradiction is also unclear, as defendants never explain why it was

necessary for Amormino to explain that he was "about to report" the illegal conduct to OSHA in his intake statement, which was his report to OSHA. As such, the Court is unconvinced by defendants' argument.

Next, defendants argue that there is "irrefutable evidence" confirming that they never learned of his complaint until after they terminated Amormino. Defendants do not cite this document in their opposition to Amormino's motion to amend, but prior briefing makes it clear that they are referring to a letter that OSHA emailed to defendant LNW on August 19, 2024. (ECF No. 2-2, PageID.69.) This letter, which OSHA sent after the LNW terminated Amormino, gave notice to LNW that Amormino filed a complaint with OSHA on August 12, 2024, which was the same day the LNW placed Amormino on administrative leave. (*Id.*; ECF No. 17-2, PageID.582.) But this piece of evidence is not as irrefutable as defendants claim. While the letter shows that LNW did not receive notice from OSHA until after defendants terminated Amormino, the "about to report" claims under the WPA only requires "objective notice . . . of a threat to report" before the employer terminates the employee. *Kaufman & Payton, P.C.*, 503 N.W.2d at 732. Such notice need not come from OSHA. *See id.* Indeed, the *Kaufman* case, which the

defendants have cited to throughout this litigation, centered on whether the plaintiff "or anyone acting on her behalf, threatened, mentioned, or otherwise indicated" that they might report alleged illegal activity to "any agency *before* her April 19 resignation." *Id.* at 731 (emphasis added). Amormino's proposed amended complaint now alleges that: (1) he told corporate investigators he was about to report a violation to a government agency, (2) the investigator communicated the threat to report to corporate insiders, and (3) defendants fired him as a result. (ECF No. 17-2, PageID.580–581.) Based on those allegations, the Court finds that Amormino has plausibly alleged that LNW had notice of Amormino's threat to report prior to his termination.[3]

Defendants' last argument on this point is that the proposed amended complaint contains no allegations which suggest that Amormino conducted any research on how to make a report or "confirming to what government body such a report could be made." (ECF

---

[3] The defendants may be suggesting, as they have in earlier briefing, that this evidence is irrefutable because it shows defendants did not have notice before the termination, which would be fatal to Amormino's reporting claim under the WPA. The Court did not address this argument as it found the plaintiffs did not adequately plead causation. *Amormino*, 2025 WL 2448479, at *3. If so, the Court declines to address it here because defendants did not explicitly reraise that argument in their opposition.

No. 18, PageID.612.) It is true that evidence of steps to make a report is required. *Campbell,* 645 F. App'x at 510 (a "plan to report, without evidence of other steps, is not enough to meet the requisite clear and convincing standard") (citation modified). Defendants' argument would be stronger if it was undisputed that Amormino did not make a report—but here, it is undisputed that Amormino made a report to OSHA. (ECF No. 18-1, PageID.620; ECF No. 2-2, PageID.69–71.) So, even if Amormino pleaded these details, it would not make his "about to report" claim any more or less plausible because it is undisputed that he did make a report. (*Id.*)

### *3. Statute of Limitations*

Defendants next argue that the "about to report" WPA claim is time-barred. (ECF No. 18, PageID.607–608.) They argue that Amormino's amended complaint brings a new "about to report" claim, which he previously did not bring within the 90-day statute of limitations, such that this new claim is untimely. (*Id.*) Defendants are correct that Amormino is bringing a new claim, as previously discussed, but they are wrong about the conclusion that the claim is barred by the statute of limitations. The federal rules plainly allow new claims to relate

back to the original claim so long as they "arose out of the *conduct, transaction, or occurrence set out—or attempted to be set out*—in the original pleading." Fed. R. Civ. P. 15(1)(B) (emphasis added). This is not an onerous standard. Claims arise from the same conduct, transaction, or occurrence "if there is an identity between the amendment and the original complaint with regard to the *general wrong* suffered and with regard to the *general conduct* causing such wrong." *Miller v. Am. Heavy Lift Shipping,* 231 F.3d 242, 250 (6th Cir. 2000). (emphasis added).

Here, there is an interrelationship between the original reporting claim under the WPA and the newly added "about to report" claim. Both allege the same general wrong—wrongful termination because Amormino either threatened to make a report or made a report to a public body—both of which the WPA prohibits. "[A] claim with entirely different operative facts will not relate back." *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 375 (6th Cir. 2015). But these claims share the same operative facts, so LNW should not be "surprised by the amplification of the allegations of the original complaint in the amended one." *Id.* (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)).

### *4. Plaintiff Still Fails to Properly Plead Defendants are his Joint Employers or act as a Single Employer*

The Court previously dismissed claims against the Light & Wonder Defendants because "Amormino has not raised either a single or joint employer claim, or even allegations from which such a theory could be inferred, in his complaint." *Amormino*, 2025 WL 2448479 at *8. Amormino believes he has fixed these pleading defects by now alleging that "Defendants share (1) a common registered office mailing address; (2) common management, directors, and board members; and (3) centralized control of labor relations and personnel" and that "both entities exercised control over his employment, including payroll, benefits, compliance investigations, discipline, and termination." (ECF No. 17, PageID.572.) However, the Court finds that the new pleadings still fail to plausibly allege that the Light & Wonder Defendants acted as a single employer or as his joint employers.

The WPA defines an "employer" as "a person who has 1 or more employees" and an "[e]mployer includes an agent of an employer and the state or a political subdivision of the state." M.C.L. § 15.361(b). Critically, only "employers" can be liable under the WPA. M.C.L. § 15.362 ("An *employer* shall not discharge . . .") (emphasis added). Thus, because

Amormino has sued multiple defendants, there must be a showing that the Light & Wonder Defendants are either a "single employer" or a "joint employer" for liability to attach to the Light & Wonder Defendants.

As this Court previously explained, courts look to the following factors to determine whether an employer is a single employer: "(1) interrelation of operations; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Amormino*, 2025 WL 2448479, at *7 (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)).

On the other hand, a joint employer theory of liability has different factors such as the "entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (citing *Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985)). Moreover, the joint employer liability factors largely overlap with the economic reality test that some courts have applied to claims under the Elliot-Larsen Civil Rights Act, and those factors include: "(1) control; (2) payment of wages; (3) hiring and firing; (4)

responsibility for the maintenance of discipline." *Bolin v. Gen. Motors, LLC*, No. 16-CV-13686, 2017 WL 3675611, at *12 (E.D. Mich. Aug. 25, 2017). Amormino still fails to adequately plead either theory.

Defendants principally rely on *Lee v. EUSA Pharma US LLC*, a similar employment case where the plaintiff brought claims under the Elliot Larsen Civil Rights Act and 42 U.S.C. § 1983. No. 22-CV-11145, 2023 WL 3212334, at *1 (E.D. Mich. May 2, 2023). The *Lee* court concluded that the plaintiffs' amended complaint failed to plausibly allege that two defendants acted as joint employers because it: (1) did not "present any facts that [the defendants] controlled his compensation," (2) failed to allege what the common goals and objectives between the defendants were, and (3) failed to explain how and to what extent a high-level HR executive of one of the defendants became involved with his termination. *Id.* at *3. Amormino's proposed amended complaint suffers from similar pleading deficiencies.

The proposed amended complaint alleges that defendants "share the same registered office mailing address, which is also the address listed for the officers and directors of each Defendant." (ECF No. 17-2, PageID.578.) It then states that "[a]ll Defendants share common

directors and board members, and there is centralized control of personnel, including Human Resources and compliance functions among the Defendants." (*Id.*) The proposed amended complaint also alleges that defendants are "all employers of Plaintiff and are doing business as Light & Wonder." (*Id.*) Amormino further alleges payroll, benefits, and employment-related communications are centralized and jointly administered by defendants and that both entities exercise the ability to "hire, fire, and discipline employees, determine compensation and benefits, and direct and supervise performance." (*Id.*) These allegations do little more than plead the "[t]hreadbare recitals of the elements" of the single and joint employer theories. *Iqbal*, 556 U.S. at 678.

Amormino never alleges how the payroll, benefits, and employment-related communications are centralized—just that they are. He does not allege how the Light & Wonder Defendants were able to fire him and to what extent they are able to determine his compensation and benefits. There is never an allegation regarding the extent to which the Light & Wonder Defendants were involved in his firing. Moreover, Amormino states in his proposed amended complaint that Daniel O'Donoghue, an HR representative, was the one who placed him on

administrative leave. (ECF No. 17-2, PageID.581.) But Amormino never explains which of the defendants O'Donoghue worked for and whether he made reports to corporate officers of the Light & Wonder Defendants. It is also not clear who the "decisionmakers" referenced in the proposed amended complaint are or their relationship with the Light & Wonder Defendants. (*See id.*) As such, the Court still cannot plausibly infer that the Light & Wonder Defendants are Amormino's single employer or a joint employer.[4] As such, this Court concludes that the proposed amended complaint is futile with respect to any claim(s) against the Light & Wonder Defendants.

---

[4] Defendants also raise two additional arguments. They argue that Amormino's motion for leave should be denied because he failed to cite any cases showing that the joint or single employer theories apply to the WPA and that his failure to explicitly plead either theory of liability is sufficient for this Court to deny Amormino's motion as futile. (ECF No. 18, PageID.604, PageID.604.) The Court will not consider these arguments since it has already concluded that Amormino fails to plead either theory adequately. But the Court recognizes that the inquiry into whether an employer is a single and joint employers is "analytically distinct." *Swallows*, 128 F.3d at 993, n. 4 (6th Cir. 1997). Currently, Amormino's proposed amended complaint pleads the factors of both tests without clearly delineating which theory he intends to pursue, or if he intends to plead both in the alternative. It is also unclear whether he is alleging that each of the Light & Wonder Defendants has the same relationship with LNW as the other. For example, it is possible that one of the defendants could be a single employer and the other is a joint employer. Pleading one theory and pleading the other in the alternative does not appear to be impermissible. *See Martin v. Lincor Eatery, Inc.*, 423 F. Supp. 3d 432, 438 (E.D. Mich. 2019) (analyzing whether non-employee defendants acted as single or joint employers).

### *5. Similar Conduct*

Defendants last argue that Amormino's proposed amended complaint is futile because Amormino fails to plead that Melissa Sly, an employee who also participated in the corporate investigation, was not subject to an adverse employment action. (ECF No. 18, PageID.616–617.) Defendants rely on *Schuessler v. Roman Cath. Diocese of Grand Rapids*—an appeal where the Michigan Court of Appeals affirmed the grant of summary judgment on plaintiff's WPA claim because she could not establish a causal connection. *Schuessler v. Roman Cath. Diocese of Grand Rapids*, No. 331985, 2017 WL 2664754, at *3 (Mich. Ct. App. June 20, 2017). In that case, the plaintiff argued that there was temporal nexus between her termination and her protected WPA activity because the uncle of a former employee who she had reported to authorities for illegal activity was the one who had terminated her employment. *Id.* *3. The Court disagreed after the record showed that the uncle and nephew did not have a close relationship, the plaintiff only played an "occasional role in the investigation," the investigative team was already aware of the illegal activity, and because another employee had a "key role" in the investigation but was never fired. *Id.* So, the *Schuessler* court weighed

multiple considerations, not just that the employer never terminated a co-worker who engaged in similar conduct. *Id.*

While such evidence is relevant, this case is distinguishable from *Schuessler*. In *Schuessler*, the record showed that the plaintiff was far less involved in the investigation than her co-worker, who her employer hired specifically to assist in the investigation. *Id.* Here, it is unclear if Sly was as involved as Amormino. (*See* ECF No. 17-2, PageID.579–80.) (allegations suggest that it was Amormino who learned of the illegal conduct first and not Sly). Moreover, it appears that the plaintiff's co-worker in *Schuessler* worked directly with the lead prosecutor, so they might also have engaged in protected activity under the WPA. *See id.* at *3; M.C.L.A. § 15.361(d)(i) (defining public body as "[a] state officer, employee . . . or other body in the executive branch of the government). Here, the complaint does not suggest that Sly made a report or was about to make a report to a public body. (*See* ECF No. 17-2, PageID.576–585.) It is also notable that *Schuessler* was an appeal of a summary judgment order, which has different legal standards than this present motion. *Compare Johnson v. VanderKooi*, 918 N.W.2d 785 (2018) ("A motion under MCR 2.116(C)(10) [Michigan's summary judgment statute], on the

other hand, tests the *factual sufficiency* of a claim") *with Bassett*, 528 F.3d at 430 (explaining courts draw all reasonable inferences in the plaintiff's favor on a motion to dismiss). Given the foregoing, the Court needs more factual development to properly assess this argument.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Amormino's motion for leave to file an amended complaint (ECF No. 17) is **GRANTED IN PART**, such that the proposed amended complaint (ECF No. 17-2) becomes the operative complaint, but that the Light & Wonder Defendants, LIGHT AND WONDER INTERNATIONAL, INC. and LIGHT & WONDER, INC, remain **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Amormino shall file his second amended complaint, in the form filed as ECF No. 17-2 without the allegations against the Light & Wonder Defendants **on or before October 13, 2026**.[5]

[5] Because a motion to amend demands the same legal analysis as a motion to dismiss, it is unlikely that the Court would dismiss the complaint in full after granting Amormino's request for leave to amend the complaint if another motion to dismiss were to be filed. Discovery shall take place.

**IT IS FURTHER ORDERED** that LNW GAMING, INC., DBA LIGHT & WONDER, is reinstated as the sole defendant in this action.

**SO ORDERED**.

**s/Jonathan J.C. Grey**
Hon. Jonathan J.C. Grey
United States District Judge

Date: September 28, 2026

**Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager